IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KING COUNTY,<br><br>        Plaintiff,<br><br>v.<br><br>VIRACON, INC., QUANEX IG SYSTEMS, INC., and TRUSEAL TECHNOLOGIES, INC.,<br><br>        Defendants. | Civil Action No. 2:19-cv-508-BJR<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT VIRACON'S MOTION TO DISMISS FIRST AMENDED COMPLAINT** |

## I.     INTRODUCTION

Plaintiff King County ("King County") instituted this action against Defendants Viracon, Inc. ("Viracon"), Quanex IG Systems, Inc. ("Quanex IG Systems"), and Truseal Technologies, Inc. ("Truseal"), alleging common law fraud and violations of Washington's Consumer Protection Act and Washington's Product Liability Act based on the construction of a building located in downtown Seattle that is own by King County. *See* Dkt. No. 12. King County seeks compensatory as well as punitive damages and further asserts that Defendants are jointly and severally liable for its damages. *Id.*

1

Currently before the Court is Viracon's motion to dismiss King County's first amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b). Dkt. No. 29.[1] Viracon argues that King County's claims under the Washington Product Liability Act, for joint and several liability, and punitive damages failed to state a claim on which relief can be granted and therefore are subject to dismissal under Rule 12(b)(6). Viracon also argues that King County's common law fraud and Washington Consumer Protection Act claims are subject to dismissal under Rule 9(b) because the claims are not pled with particularity. King County opposes the motion. Dkt. No. 35. Having reviewed the motion, the opposition thereto, the record of the case, and the relevant legal authorities, the Court will grant Viracon's motion to dismiss the Washington Products Liability Act claim pursuant to Rule 12(b)(6), strike King County's request for punitive damages as premature, and deny the motion as to the common law fraud and Washington Consumer Protection Act claims. The reasoning for the Court's decision follows.

## II. BACKGROUND

King County is a government entity and political subdivision of the State of Washington. Dkt. No. 12 at ¶ 1.1. Viracon is incorporated and headquartered in Minnesota and in the business of manufacturing insulating glass units ("IGUs") for distribution and sale throughout the United States. *Id*. at ¶ 1.2. At the center of this lawsuit is an office building—"the Chinook Building"— located in Seattle, Washington that is owned by King County. *Id*. at ¶ 5.1. The Chinook Building has what the parties refer to as a "curtainwall" exterior—an exterior comprised of IGUs that were manufactured and sold by Viracon. *Id*. at 5.2. The IGUs consist of double paned windows with a hermetically sealed air space between the panes of glass that provides thermal and acoustical

---

[1] Quanex IG Systems and Truseal moved to dismiss the first amended complaint in a separate motion. *See* Dkt. No. 32. This Court granted the motion on October 29, 2019. Dkt. No. 53. Therefore, Viracon is the only remaining Defendant in this action.

insulation. *Id*. at 5.3. Polyisobutylene-based sealant ("PIB-based sealant") is used to seal the window panes. *Id*. at ¶ 5.4.

King County alleges that the PIB-based sealant Viracon used to create the IGUs' hermetic seal is failing, causing a film to migrate "into the sightlines and glass of the [IGUs]." *Id*. at 5.10. The County alleges that the film impairs visibility and affects the overall appearance of the Chinook Building. *Id*. According to King County, the film "is present with varying degrees of severity on all of the Building's nearly 3,000 [IGUs]." *Id*. at 5.9. King County further asserts that the industry standard is to use black PIB-based sealant in IGUs because the black sealant "include[s] an ingredient called carbon black that protect[s] the PIB from degrading in sunlight." *Id*. at 5.12. However, King County alleges, instead of using black PIB-based sealant in the IGUs for the Chinook Building, Viracon sealed the IGUs with gray PIB-based sealant that was manufactured by Quanex I.G. Systems and Truseal. According to King County, Viracon, Quanex I.G. Systems, and Truseal knew that the gray PIB-based sealant was "defective and its performance [] inferior to that of [b]lack PIB" and, as such, the use of gray PIB-based sealant would render the IGUs "[un]suitable for their intended purpose[]" on the Chinook Building. *Id*. at 5.13.

Indeed, King County claims, at the time that the IGUs with the gray PIB-based sealant were installed on the Chinook Building, each of the Defendants knew of other buildings that had Viracon-manufactured IGUs with gray PIB-based sealant that were experiencing the same issues that the Chinook Building is now experiencing. *Id*. at 5.14. King County alleges that Viracon was aware of these issues at least two years before the IGUs were installed on the Chinook Building. *Id*. at 5.13. Therefore, King County charges, Viracon "understood and knew that the types of damages King County complains of [in this lawsuit] were likely to occur, more likely to occur

than if standard [b]lack PIB were [*sic*] used in the [IGUs], and did nothing to prevent the [g]ray

PIB from reaching the marketplace, or prevent the installation on the Building of [IGUs] using the

[g]ray PIB." *Id*. at 5.15. Lastly, King County alleges that it could do nothing to avoid its damages,

by negotiation or otherwise, because only Defendants "knew of the defect and covered it up with

their misrepresentations and nondisclosure." *Id*. at 5.15.

## III.    STANDARD OF REVIEW

The court construes the complaint in the light most favorable to the non-moving party

when considering a motion to dismiss under Rule 12(b)(6). *Livid Holdings Ltd. v. Salomon Smith*

*Barney, Inc*., 416 F.3d 940, 946 (9th Cir. 2005). The court must accept all well-pleaded

allegations of material fact as true and draw all reasonable inferences in favor of the plaintiff. *See*

*Wyler Summit P'ship v. Turner Broad. Sys., Inc*., 135 F.3d 658, 661 (9th Cir. 1998). "To survive a

motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a

claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663.

In addition, Rule 9(b) requires that, when fraud is alleged, "a party must state with

particularity the circumstances constituting fraud...." Fed.R.Civ.P. 9(b). Thus, a party alleging

fraud must "set forth more than the neutral facts necessary to identify the transaction." *In re*

*GlenFed, Inc. Sec. Litig*., 42 F.3d 1541, 1548 (9th Cir.1994), superseded by statute on other

grounds. "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of

the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)

(quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir.1997)). "Rule 9(b) serves three purposes:

(1) to provide defendants with adequate notice to allow them to defend the charge and deter plaintiffs from the filing of complaints 'as a pretext for the discovery of unknown wrongs'; (2) to protect those whose reputation would be harmed as a result of being subject to fraud charges; and (3) to 'prohibit [ ] plaintiff[s] from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis.'" *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (quoting *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1405 (9th Cir.1996) (internal quotations omitted, brackets in original)).

## IV.    DISCUSSION

As stated above, Viracon moves to dismiss each of King County's claims against it; this order addresses each claim in turn.

### A.    The Washington Product Liability Act Claim Is Barred by the Economic Loss Exclusion

King County alleges that Viracon is strictly liable for the County's damages caused by Viracon's allegedly defective product—the IGUs—pursuant to the Washington Product Liability Act ("WPLA"). The WPLA "creates a single cause of action for product-related harms that supplants previously existing common law remedies." *Wash. Water Power Co. v. Graybar, Elec. Co.*, 774 P.2d 1199, 1207 (Wash. 1989). A party may sue under the WPLA for "any claim or action brought for *harm* caused by the manufacture, production, making, construction, fabrication, design, formula, preparation, assembly, installation, testing, warnings, instructions, marketing, packaging, storage or labeling of the relevant product." *Staton Hill Winery Co., Ltd. v. Collons*, 980 P.2d 784, 786 (Wash. App. 1999) (emphasis in original) (quoting RCW 7.72.010(4)). A plaintiff may recover for harm caused by defective products but cannot recover for economic losses. RCW 7.72.010(6); *Touchet Valley Grain Growers, Inc. v. Opp & Seidbold General Const., Inc.*, 831 P.2d 724, 733 (Wash. 1992). Thus, the WPLA "confines recovery to

physical harm of persons and property and leaves economic loss, standing alone, to the Uniform Commercial Code." *Id.*

This is referred to as the "economic loss" exclusion under WPLA. *Mensonides Dairy, LLC v. Agri-King Nutrition*, 2017 WL 8777386, *3 (E.D. Wash. December 27, 2017) (citing *Touchet*, 831 P.2d at 733). The economic loss exclusion "marks the boundary between the law of contracts—designed to enforce expectations created by agreement—and the law of torts—designed to protect citizens and their property by imposing a duty of reasonable care on others." *Hofstee v. Dow*, 36 P.3d 1073, 1076 (Wash. App. 2001). "Particular damages may be remediable in tort as well as in contract, but if the damages fall on the contract side of the line and more properly remediable in contract, tort recovery is precluded." *Id.* (citing *Berschauer/Phillips Constr. Co. v. Seattle Sch. Dist. No.1*, 881 P.2d 986, 990 (Wash. 1994)).

Washington courts have adopted a "risk of harm" analysis to determine whether a plaintiff's damages fit within the economic loss exclusion. *Id.* at 1077. Under this analysis, courts consider the nature of the defect, the type of risk it posed, and the manner in which the injury arose to determine whether "the safety-insurance of tort law or the expectation-bargain protection of contract law is most applicable." *Id.* In performing the risk of harm analysis, Washington courts employ two tests—a "sudden and dangerous" test and an "evaluative approach"— to determine whether the harm is actionable under the WPLA or barred by the economic loss exclusion. *Touchet*, 831 P.2d at 733; *Moodie v. Remington Arms Company, LLC*, 2013 WL 12191352, *7 (W.D. Wash. 2013).

King County claims to satisfy only the "evaluative approach" test, so the Court will focus its analysis on it. Under the "evaluative approach," a court considers (1) the nature of the defect, (2) the type of risk, and (3) the manner in which the injury arose. *Touchet*, 831 P.2d at 733. As to

the first element—the nature of the defect—courts consider "whether the product failed to meet the purchaser's expectations, such as a gradual internal deterioration, or whether [the product] was generally defective; that is, whether it suddenly leaked, exploded, or came apart, such as a violent collision." *Nobl Park. LLC of Vancouver v. Shell Oil Co.*, 95 P.3d 1265, 1271 (Wash. Ct. App. 2004) (citing *Staton Hills,* 980 P.2d at 788).

King County describes the nature of the alleged defect in the IGUs as follows:

> Due to the performance malfunction, the [gray PIB-based sealant] **has gradually and progressively** formed a film migrating into the sightlines and glass of the [IGUs] **impairing their ability to function as a window and the overall appearance of [the] Building exterior**. The film appears in various ways such as a dramatic expansion or stretching, a bubbling from the spacer onto the panes' interior surfaces, long solitary icicles, or a dripping band of seepage.

Dkt. No. 12 at ¶ 5.10 (emphasis added). King County alleges that it first noticed this alleged defect ten years after the IGUs were installed and that as a result of this film, the IGUs "[do] not perform as an ordinary consumer would have expected them to perform …" Dkt. No. 12 at ¶ 6.8; ¶ 5.6. These allegations are textbook failure-to-meet-expectation claims that fall on the "contract side of the line". *See Polygon Northwest Co. LLC v. Louisiana-Pacific Corp*, 2012 WL 2504873, *3 (W.D. Wash. June 28, 2012) (holding that allegations that building siding "suffered from distortion, deformation, and fading" implicates the expectation-bargain policies of contract law, not tort law); *Staton Hills*, 980 P.2d at 787 ("[T]ort law policies are not applicable where a product's defect is merely its failure to meet the purchaser's expectation.").

Further, King County claims that the alleged defect occurred a decade after the IGUs were installed and that the defect is spreading "gradually and progressively." Dkt. No. 10 at ¶ 5.10. In other words, there has been no sudden and dangerous failure of the IGUs. Once again, these allegations fall on the "contract side of the line." *See Trinity Glass Intern. Inc. v. LG Chem, Ltd.*,

2010 WL 5071295 (W.D. Wash. December 7, 2010) (holding that plaintiff's WPLA claim was barred by the economic loss exclusion because "[t]here was no sudden and dangerous failure of the product alleged in the pleadings, nor was there a sudden and calamitous event"); *Staton Hills*, 980 P.2d at 788 (noting that the product "did not leak, explode, or come apart" rather it failed to "fulfill contract requirements" thus the defect "implicates the 'expectation-bargain protection' policies of contract law and does not implicate the safety insurance policies of tort law"); *Stuart v. Coldwell Banker Comm'l Group, Inc.*, 745 P.2d 1284, 1291 (Wash. 1987) ("Defects of quality are evidenced by internal deterioration, and designated as economic loss, while loss stemming from defects that cause accidents involving violence or collision with external objects is treated as physical injury."). Thus, the nature of the IGUs alleged defect weighs in favor of finding King County's alleged harm as a purely economic loss.

The second factor courts consider—the type of risk—also weighs in favor of finding that King County's alleged harm is an economic loss. Under this factor, this Court must consider "the magnitude of risk the product's defect posed to itself, to other property, or to persons," whether the risk was foreseeable, whether King County had bargaining power to reduce the risk. *Staton Hills*, 980 P.2d at 788. Here, there was no reasonable risk of harm to people or property. King County has not alleged any risk to persons or significant risk to property. Rather, it primarily alleges damage to the IGUs themselves and potential damages that may be incurred when removing and replacing the defective IGUs. King County's allegations stand in stark contrast to cases in which courts have determined that the risk caused by the defect did implicate tort policies. *See, e.g.*, *Touchet*, 831 P.2d at 734 ("The risk of structural collapse posed a real, nonspeculative danger of physical injury to any persons walking in or about the flathouse building."); *Moodie v. Remington Arms Company, LLC*, 2013 WL 12191352, *7 (W.D. Wash.

August 2, 2013) ("[T]he risk that the gun fires without a trigger pull … is precisely the type of safety risk that underlies the safety-insurance concerns of tort law (which allocated the responsibility for avoiding such risks to the manufacturer, who is in the best position to detect and eliminate them)."). Furthermore, this Court finds that a defect that impairs visibility through a window is exactly the type of risk associated with windows and was, therefore, foreseeable. *See Agri-King Nutrition*, 2017 WL 8777386, *4-5 (E.D. Wash. December 27, 2017) (product was designed to assist fermentation so its failure to boost fermentation was a foreseeable risk); *Polygon Northwest*, 2012 WL 2504873, *3 (W.D. Wash. June 28, 2012) (warping was a foreseeable defect of the siding). Thus, this factor—the type of risk—also weighs in favor of finding that King County's harm is purely an economic loss.

The final element courts consider—the manner in which the injury arose—asks "whether the injury arose as the result of a calamitous and sudden event." *Hofstee*, 36 P.3d at 1078; *Agri-King Nutrition*, 2017 WL 8777386, *3, *5 (E.D. Wash. December 27, 2017) (noting that this factor asks whether the products failure is "the result of a sudden and dangerous event"). As previously stated, King County alleges that defect in the IGUs—*i.e.* "the film migrating into the sightlines and glass"—has occurred "gradually and progressively". Dkt. No. 12 at ¶ 5.10. This is the opposition of "calamitous and sudden", thus this element also weighs in favor of finding that the County's harm is purely an economic loss.

For the foregoing reasons, this Court concludes that King County's claim of harm is purely economic. The County's WPLA claim is dismissed because it falls under the WPLA's economic loss exclusion.

### B. King County Pled the Common Law Fraud and Washington Consumer Protection Act Claims with Particularity

As stated above, under the Federal Rule of Civil Procedure 9(b) pleading standard, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess*, 317 F.3d at 1106 (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)). Even if the elements of a claim do not include fraud, an allegation of a "unified course of fraudulent conduct" requires that "the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)." *Id.* at 1103–04. The Rule 9(b) standard is relaxed in fraudulent omission cases. *Zwicker*, 2007 WL 5309204, at *4 (W.D. Wash. July 26, 2007). In such cases, a plaintiff may "not be able to specify the time, place, and specific content of an omission as precisely as would a plaintiff in a false representation claim." *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1098–99 (N.D. Cal. 2007).

Here, King County alleges that Viracon committed fraud against it in the form of (1) fraudulent omission and (2) fraudulent misrepresentation. The alleged fraudulent omission and misrepresentation are also the basis for King County's claim under the Washington Consumer Protection Act ("WCPA"). Thus, both the fraud and the WCPA claims must satisfy the Rule 9(b) heighten pleading requirement. *See Vess*, 317 F.3d at 1103-04. For the reasons set forth below, this Court concludes that King County's common law fraud and WCPA claims meet Rule 9(b)'s particularity requirement.

King County alleges that it "entered into a public private partnership with Goat Hill Properties to have the Chinook Building constructed on King County's property" and that Goat Hill, in turn, contracted with another entity to "act as the developer" on the project. Dkt. No. 12 at ¶ 5.1. King County further alleges that Chinook Building's exterior is comprised of IGUs manufactured by Viracon and that these IGUs used gray PIB-based sealant instead of black PIB-

based sealant. King County claims that at the time of the installation of the IGUs on the Chinook Building, Viracon knew the gray sealant was "defective and its performance [] inferior to that of [black sealant]." *Id.* at ¶ 5.13. King County further alleges that concurrently with the installation of the IGUs on the Chinook Building, Viracon was aware of other buildings experiencing defects with IGUs that used gray PIB-based sealant but failed to notify King County of these issues. Instead, King County alleges, Viracon "disseminated product literature indicating the [gray PIB-based sealant] performed as well as the [black PIB-based sealant] and could be used interchangeably with identical results." *Id.* at ¶ 5.15. Finally, King County asserts that had it known of the issues with the gray PIB-based sealant, it would not have allowed IGUs with gray sealant to be installed on the Chinook Building. Thus, King County claims, it relied on Viracon's alleged fraudulent omissions and misrepresentation to its detriment.

The Court finds that these allegations satisfy the particularity requirement of Rule 9(b). King County has sufficiently alleged who (Viracon), what (product literature indicating that gray PIB-based sealant is as effective as black PIB-based sealant), where (the marketplace), and how (Viracon allegedly allowed this misrepresentation to enter the marketplace even though it was aware that gray PIB-based sealant does not perform as well as black PIB-based sealant). These allegations satisfy the general purpose behind Rule 9(b)'s heightened pleadings requirements— they place Viracon on notice of the specific misconduct of which it is charged. Therefore, the motion to dismiss is denied as to the common law fraud and WCPA claims.

### C.    King County's Claim for Punitive Damages

The Amended Complaint alleges punitive damages against Viracon under Minnesota law. Dkt. No. 12 at ¶ 11.2. Under Minnesota law, a plaintiff may not state a claim for punitive damages in its original pleadings; rather, the plaintiff must make a motion to amend its pleading

to include punitive damages. *Gamma-10 Plastics, Inc. v. American President Lines, Ltd.* 32 F.3d 1244, 1255 (8th Cir. 1994), *certiorari denied*, 513 U.S. 1198 (1994); *Freeland v. Financial Recovery Services, Inc.*, 790 F. Supp. 2d 991, 994 (D. Minn. 2011). The purpose of this law is to prevent frivolous punitive damage claims by allowing a court to determine first if punitive damages are appropriate. *Gamma-10 Plastics*, 32 F.3d at 1255; *Bougie v. Sibley Manor, Inc.*, 504 N.W.2d 493, 499 (Minn. App. 1993) (purpose of the statute setting forth procedure for making claim for punitive damages is to ensure that punitive damages are only pleaded in those cases where such damages are appropriate). Thus, King County's claim for punitive damages is premature and must be dismissed.[2]

## V.    CONCLUSION

For the foregoing reasons, the Court HEREBY GRANTS in part and DENIES in part Viracon's motion to dismiss [Dkt. No. 29]. The WPLA claim is dismissed with prejudice, the punitive damages claim is dismissed as premature, and the motion is denied as to King County's common law fraud and WCPA claims.

Dated this 4th day of December 2019.

Barbara    Jacobs    Rothstein
U.S. District Court Judge

---

[2] Viracon also moves to dismiss King County's assertion that the Defendants in this action are jointly and severally liable. Because the Court has already dismissed the claims against the other Defendants in this action, it is not necessary for the Court to address this issue.