1

2

3

4

5

6

7

The Honorable Barbara J. Rothstein

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

9

10

11

12

KING COUNTY,

            Plaintiff,

    v.

VIRACON, INC.,

            Defendant.

Civil Action No. 2:19-cv-508-BJR

**ORDER REGARDING WITHHELD DOCUMENTS**

13

14

## I.      INTRODUCTION

15

16

17

18

19

20

21

22

Defendant Viracon, Inc. ("Viracon") fabricated and sold insulating glass units ("IGUs") installed on an office building in Seattle, Washington. Plaintiff King County owns the building and claims that the IGUs are defective. The County instituted this lawsuit against Viracon, asserting three claims: violation of the Washington Products Liability Act ("WPLA"), violation of the Washington Consumer Protection Act ("WCPA"), and common law fraud. This Court dismissed the WPLA claim in December 2019; thus, only the WCPA and common law fraud claims remain.[1]

23

24

25

A dispute has arisen between the parties regarding 124 documents that Viracon withheld from its discovery production pursuant to attorney-client privilege and the work product doctrine.

26

27

---

[1] King County also named Quanex IG Systems, Inc. and Truseal Technologies, Inc. as defendants, but each was dismissed from this action on October 29, 2019. Dkt. No. 53.

King County objects to Viracon withholding the documents and requested the Court's intervention. This Court held a telephonic status conference on September 16, 2020, at the conclusion of which the Court ordered the parties to brief the issue and instructed Viracon to submit a representative sample of the withheld documents for *in camera* review. Dkt. No. 82.

Having reviewed the documents, the parties' arguments, the record of the case, and the relevant legal authorities, the Court concludes that the withheld documents are protected by attorney-client privilege and/or the work product doctrine. The reasoning for the Court's decision follows.

## II.    BACKGROUND

At the center of this lawsuit is the "Chinook Building"—an office building located in downtown Seattle that was built in 2007. Dkt. No. 12 at ¶ 5.1. The Chinook Building has what the parties refer to as a "curtainwall" exterior—an exterior comprised of IGUs that were manufactured and sold by Viracon. *Id.* at 5.2. The IGUs consist of double paned windows with a hermetically sealed air space between the panes of glass that provides thermal and acoustical insulation. *Id.* at 5.3. Polyisobutylene-based sealant ("PIB-based sealant") is used to seal the windowpanes. *Id.* at ¶ 5.4. King County alleges that the PIB-based sealant is failing, causing a film to migrate "into the sightlines and glass of the [IGUs]." *Id.* at 5.10. The County alleges that the film impairs visibility and affects the overall appearance of the Chinook Building and seeks compensatory damages from Viracon. *Id.*

As stated above, the parties reached an impasse regarding Viracon's refusal to produce 124 documents that King County claims are responsive to its discovery requests. Viracon does not dispute the relevancy of the documents; rather, it withheld their production based on attorney-client privilege and the work product doctrine, claiming that the documents were created in

anticipation of litigation with Viracon's primary PIB-based sealant supplier, Truseal Technologies/Quanex IG Systems ("Quanex").

Specifically, Viracon alleges that in mid-2012 it became aware of "a small number of projects experiencing movement of gray [PIB-based sealant] manufactured by [Quanex] into the vision areas of certain Viracon IGUs" and it began investigating whether "it had claims against Quanex to recover costs it incurred and expected to incur in connection with the replacement of those IGUs." Dkt. No. 84 at 2 (citing Declaration of Laurie Anderson, Dkt. No. 85). Viracon's in-house counsel, Laurie Anderson, "oversaw both the investigation into claims against Quanex and responses to warranty claims made by building owners." *Id*. To that end, Viracon alleges, Ms. Anderson ordered testing on IGUs that contained Quanex's gray PIB-based sealant. Ms. Anderson "directed and oversaw" the testing and "was involved in almost daily telephone conversations with Viracon technical employees" concerning the testing. *Id*.

With respect to the Chinook Building, Viracon alleges that it first learned of a potential issue with the Building's IGUs when Viracon's customer, Walters & Wolf, contacted it in 2013.[2] Dkt. No. 108 at 1. Viracon claims that "Walters & Wolf removed and replaced two IGUs [from the Chinook Building] and sent them to Viracon for testing." *Id*. at 2. Ms. Anderson "directed and oversaw testing" of those IGUs and retained "two outside laboratories to perform the tests". Dkt. No. 84 at 3.

Viracon claims that each of the 124 documents it withheld from production relates to the foregoing testing of the IGUs, all of which was conducted in anticipation of litigation against

---

[2] The parties do not specify Walters & Wolf's involvement with the Chinook Building, but the record indicates that Walters & Wolf was the glazier for the Chinook Building project and it contracted with Viracon to supply the IGUs for the Building.

Quanex. Therefore, Viracon argues, each document is subject to attorney-client privilege and/or the work product doctrine and is properly withheld.

## III.     STANDARD OF REVIEW

The attorney-client privilege protects confidential communication between attorneys and clients that is made for the purpose of providing legal advice. *United States v. Sanmina Corporation*, 968 F.3d 1107, 1116 (citing *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)). The privilege "may extend to communications with third parties who have been engaged to assist the attorney in providing legal advice." *Id.* (quoting *United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011)).

"[T]he work-product doctrine is distinct from and broader than the attorney-client privilege." *United States v. Nobles*, 422 U.S. 225, 239 n.11 (1975). The doctrine "is not a privilege but a qualified immunity protecting from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation." *Admiral Ins. Co. v. United States Dist. Court for the Dist. of Arizona*, 881 F.2d 1486, 1494 (9th Cir. 1989) (citing Fed. R. Civ. P. 26(b)(3)). The primary purpose of the work-product doctrine is to "prevent exploitation of a party's efforts in preparing for litigation." *Id.* Documents created by agents of the attorney in preparation for litigation may be covered by the work-product doctrine. *McKenzie Law Firm, P.A. v. Ruby Receptionists, Inc.*, 333 F. R.D. 638, 641 (D. Or. 2019) (citing *Richey*, 632 F.3d at 567). The party asserting the work product doctrine has the burden of proving the materials meet the criteria for work product. *Id.*

## IV.     DISCUSSION

Viracon states that it withheld the 124 documents based on attorney-client privilege and the work product doctrine because the documents relate to testing performed on IGUs in

4

anticipation of litigation with its primary sealant provider, Quanex. Viracon asserts that some of the documents contain legal advice related to the potential litigation and, as such, are protected by attorney-client privilege. Viracon claims that the remaining documents relate to the testing ordered and overseen by its in-house counsel in anticipation of the litigation and, as such, are protected work product. Lastly, Viracon argues that King County has not demonstrated a substantial need for the documents because Viracon has already produced a summary of the test results and the parties do not dispute that the gray PIB-sealant caused the IGUs to fail.

King County raises several objections to Viracon's invocation of the attorney-client privilege and work product doctrine. First, it argues that that attorney-client privilege is inapplicable to at least 86 of the documents because an attorney did not send nor receive those documents. Second, King County argues that Viracon failed to demonstrate that the documents were created in anticipation of litigation. Lastly, King County asserts that even if the documents were created in anticipation of litigation, the documents should still be produced because "they evidence secret surveillance and testing" of the Chinook Building and that evidence cannot be obtained elsewhere. Dkt. No. 105 at 1.

A.      **Whether the Documents Are Protected by Attorney-Client Privilege**

Viracon, as the party asserting attorney-client privilege, has the burden of proving that the privilege applies to the documents in question. *In re Grand Jury Investigation*, 974 F.2d 1068, 1070 (9th Cir. 1992). A communication requires the following eight elements to fall within the attorney-client privilege: "(1) Where legal advice of any kind is sought, (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or the by the legal adviser, (8) unless the protection is waived." *Fischel v. Margolis*, 557

F.2d 209, 211 (9th Cir. 1977) (quoting 8 John H. Wigmore, *Evidence* § 2292, at 554

(McNaughton Rev. 1961). A party asserting attorney-client privilege may satisfy its burden of

proving that the privilege applies to the documents in question by submitting a privilege log and

affidavits regarding the documents' confidential nature. *In re Grand Jury Investigation*, 974 F.2d

at 1071. While there is no set formula that a privilege log must follow, the Ninth Circuit has held

that a log satisfies a party's burden if it identifies: (1) the attorney and client involved, (2) the

nature of the document, (3) all persons or entities shown on the document to have received or sent

the document, and (4) the date the document was generated, prepared, or dated. *Id*.

Here, Viracon produced a privilege log with the following headings: (1) Control Number,

(2) Date, (3) Privilege, (4) Subject, (4) Email – To, (5) Email – From, (6) Email – CC. Dkt. No.

106, Ex. 1. The privilege log is accompanied by a declaration from Laurie Anderson, the

Assistant General Counsel for Viracon's parent company. Dkt. No. 85. Ms. Anderson testifies

that she was responsible for handling all legal matters from Viracon from 2005 until she retired in

March 2014. *Id*. at ¶ 3. Ms. Anderson further testifies that beginning in 2012, she began

investigating whether Viracon may have legal recourse against Quanex due to the faulty IGUs

and ordered testing of the IGUs as part of the investigation. *Id*. at ¶¶ 5-6, 8. She also retained

outside legal counsel on behalf of Viracon "to assist" in the "investigation into potential claims

against Quanex." *Id*. at ¶ 7.

Lastly, Viracon provided the Court with 48 documents that it contends are a representative

sample of the 124 documents it withheld from discovery. Each of the documents falls within the

timeframe during which Viracon began investigating its claims against Quanex and the subject

matter of which concerns those potential claims and/or testing of the IGUs. Indeed, many of the

documents are marked confidential and specifically state that they were made in anticipation of

litigation. Thus, Viracon has met its burden of demonstrating the applicability of the attorney-client privilege to the 22 documents on the privilege log that list Ms. Anderson (or Meghan Elliott who replaced Ms. Anderson after her retirement in 2014) as either the sender or recipient.

**B.      Whether the Documents Are Protected by the Work Product Doctrine**

Under the work product doctrine, materials can be protected from discovery if they are prepared by or for a party or its representative in anticipation of litigation. *Phoenix Technologies Ltd v. VMware, Inc.*, 195 F. Supp. 3d 1096, 1101 (N.D. Cal. 2016). The doctrine "is 'an intensely practical one,' and thus recognizes that 'attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial." *Lewis v. Wells Fargo & Co.*, 266 F.R.D. 433, 440 (N.D. Cal. 2010) (quoting *In re Grand Jury Subpoena, Mark Torf/Torf Envt'l Mgmt*, 357 F.3d 900, 907 (9th Cir. 2004)).

Viracon asserts that each of the documents it withheld "concern[s] testing performed at the direction of Viracon's in-house counsel in anticipation of litigation with Quanex and responding to building owners who had made warranty claims." Dkt. No. 84 at 3. Therefore, Viracon argues, the documents are protected by the work product doctrine. King County counters that Viracon has failed to establish that the withheld documents were prepared in anticipation of litigation, or if they were, whether it was "objectively reasonable" for Viracon to believe that "litigation [with Quanex] was a real possibility." Dkt. No. 105 at 7.

The Court finds that the documents are protected by the work product doctrine. As evidenced by the privilege log, each of the documents post-dates Ms. Anderson's involvement in assessing—with the assistance of outside counsel—Viracon's potential legal claims against Quanex. Moreover, each of the documents provided for *in camera* review relates to testing Viracon performed—at Ms. Anderson's direction—in furtherance of that investigation. Some of

the documents constitute engagement agreements between Viracon and the laboratories that conducted the tests, others are email communications related to the tests and/or outcomes, and still others provide updates on the testing. Notably, many of the documents are marked confidential and/or privileged.

King County tries to avoid this outcome by pointing out that the testing conducted on the two IGUs from the Chinook Building was done in 2013. According to King County, "it is entirely implausible for Viracon's counsel to have performed testing on [the IGUs] in subjective anticipation of litigation" given that King County did not contact Viracon about problems with the Chinook Building until after 2013. Dkt. No. 105 at 8. King County's argument is misplaced. The work product doctrine does not require that Viracon anticipated litigation with King County related to the Chinook Building. Rather, the work product doctrine applies to work conducted in anticipation of *any* litigation. *F.T.C. v. Grolier Inc.*, 462 U.S. 19, 25 (1983) (the work product doctrine "protects materials prepared for *any* litigation or trial as long as they were prepared by or for a party to the subsequent litigation") (emphasis in original); *see also*, *Campagnolo S.R.L. v. Full Speed Ahead, Inc.*, 2010 WL 11527271, *2 (W.D. Wash. April 27, 2010) (noting that "[t]he literal language of Rule 26(b)(3)" protects materials prepare for any litigation, "[t]hus the testing reports at issue here are protected if created because of some litigation, even if not created because of *this* litigation") (emphasis in original). Here, Viracon anticipated taking legal action against Quanex and the tests were conducted in furtherance of that potential litigation. Thus, the documents are protected by the work product doctrine. *See*, *Campagnolo S.R.L.*, 2010 WL 11527271, *2 (W.D. Wash. April 27, 2010) (testimony from in-house counsel that "testing [was] based on the possibility of litigation with third parties… establishes that those tests were conducted in anticipation of litigation").

C.      **Whether King County Has a Substantial Need for the Documents**

As stated above, if the challenged work product does not contain the mental impression, conclusion, or legal theory of an attorney, work product protection is qualified. *Campagnolo*, 2010 WL 11527271, *2 (W.D. Wash. April 27, 2010). A party may discover the material if it shows it has substantial need for the material and cannot obtain substantial equivalents by other means. *Id.* (citing Fed. R. Civ. Proc. 26(b)(3)(A)(ii)).

King County asserts that it has a substantial need for the withheld documents because the documents evidence: (1) "secret surveillance and testing Viracon conducted" of the Chinook Building, (2) the "involvement of window glazer Walters & Wolf" in the "secret testing", and (3) that "Viracon's 10-year warranty was likely triggered" at the time of the testing. Dkt. No. 105 at 10. The Court is not persuaded by King County's arguments.

First, while King County claims that Viracon conducted "secret surveillance and testing" of the Chinook Building, the Court has reviewed no evidence suggesting such secret surveillance. To the contrary, Viracon admits that one of its employees visited the Chinook Building in 2013 after it was contacted by Walters & Wolf regarding potential issues with the IGUs. Indeed, Viracon produced to King County a non-privileged document that memorializes the trip. *See* Email dated May 31, 2013 "NW trip" from Garrett Henson to Cameron Scripture Dkt. No. 79-4, Ex. 40. Moreover, the Court finds it unlikely that King County was not aware that two IGUs were removed from the Chinook Building in 2013 given the extensive and noisy work required to complete the removal and replacement.

Likewise, it is disingenuous for King County to claim that it was not aware of Walters & Wolf's involvement as the County took the deposition of Walters & Wolf's project manager for the Chinook Building project. Nor does King County need access to the documents to establish

that Viracon's warranty was triggered at the time of the testing (*i.e.*, 2013). That is because the County's own employee, Ryan Shultz—a window washer—, notified the County of the issue with the IGUs in 2013 or 2014, well within the 10-year warranty. *See* Deposition of Ryan Shultz dated August 12, 2020, Dkt. No. 69, Ex. 16 at 19:23-20:16.

Lastly—and perhaps most importantly—King County cannot establish a substantial need for Viracon's withheld testing materials because the parties do not dispute the cause of the IGUs failure. Experts for both sides agree that the IGUs failed due to the gray PIB-sealant. Even if that issue was in dispute, King County cannot reasonably claim that it is unable to obtain "a substantial equivalent" of the testing done on the IGUs as Viracon has produced a summary of the test results to the County. Therefore, the Court concludes that King County has not met its burden of demonstrating "a substantial need for the [withheld documents] and inability to obtain substantially equivalent material without undue hardship." *Campagnolo S.R.L.*, 2010 WL 11527271, *3 (W.D. Wash. April 27, 2010) (citing Fed. R. Civ. Proc. 26(b)(3)).

## V.    CONCLUSION

For the foregoing reasons, the Court HEREBY CONCLUDES that the 124 documents are protected by attorney-client privilege and/or the work product doctrine and have been properly withheld from production.

Dated this 26th day of October 2020.

Barbara    Jacobs    Rothstein
U.S. District Court Judge