The Honorable Barbara J. Rothstein

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KING COUNTY,

Plaintiff,

v.

VIRACON, INC.,

Defendant.

Civil Action No. 2:19-cv-508-BJR

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

At the center of this lawsuit is "the Chinook Building", an office building located in Seattle, Washington that was built in 2007 pursuant to a private-public partnership between Goat Hill Properties ("Goat Hill"), an investment builder, and Plaintiff King County, a government entity. The Chinook Building has what the parties refer to as a curtain wall exterior—an exterior comprised of insulating glass units ("IGUs") that were manufactured and sold by Defendant Viracon, Inc. ("Viracon"). King County alleges that some of the IGUs on the Chinook Building have developed a film that partially obstructs the view from the Building's windows and, as such, must be replaced. King County filed this lawsuit against Viracon to recover the cost to remove and replace the IGUs, as well as other damages.

Currently before the Court is Viracon's motion for summary judgment in which it moves to dismiss the operative complaint in its entirety. Dkt. No. 68. King County opposes the motion.

Dkt. No. 88. Having heard oral argument, reviewed the motion and opposition thereto, the record of the case, and the relevant legal authority, the Court will grant the motion. The reasoning for the Court's decision follows.

## II. BACKGROUND

### A. Procedural History

Initially King County brought this action against Viracon, Quanex IG Systems, Inc. ("Quanex"), and Truseal Technologies, Inc. ("Truseal"), alleging three causes of action: (1) violation of the Washington Products Liability Act ("WPLA"), (2) common law fraud, and (3) violation of the Washington Consumer Protection Act ("WCPA"). Dkt. No. 1. King County amended the complaint in May 2019 and each defendant moved to dismiss the claims against it. Dkt. Nos. 12, 29, and 32. This Court granted Quanex and Truseal's joint motion to dismiss in its entirety in October 2019 and partially granted Viracon's motion in December 2019, dismissing the WPLA claim, but denying the motion as to the common law fraud and WCPA claims. Dkt. Nos. 53-54. Viracon now moves for summary judgment on these two remaining claims. Dkt. No. 68.

### B. Factual Background

#### 1. Viracon's IGUs

Viracon manufactures IGUs for distribution and sale throughout the United States. Viracon's IGUs consist of two or more lites (*i.e.* panes) of glass separated by a metal spacer enclosing a hermetically sealed air space. To create the hermetically sealed space, the IGUs are fabricated using a primary sealant made from polyisobutylene ("PIB-based sealant"). The PIB-based sealant is applied to the spacer bar that separates the two lites of glass. The PIB-based sealant does not serve a structural purpose; rather, it is utilized to hold the lites in place during the

manufacturing process before a secondary structural silicone sealant is added. Historically, Viracon fabricated IGUs using only black PIB-based sealants, but beginning in 2002, Viracon added gray PIB-based sealant as an option for its customers.

**2. The Chinook Building**

In 2005, King County entered a private-public partnership with Goat Hill whereby King County agreed to lease land the County owned in downtown Seattle to Goat Hill and Goat Hill, in turn, agreed to develop and build an office building on the land—the Chinook Building. Goat Hill and King County also agreed that Goat Hill would lease the Chinook Building to King County until December 31, 2044 at which time, ownership of the Building would revert to King County. King County paid for the construction of the Chinook Building by issuing tax-exempt bonds.

Thereafter, Goat Hill entered into a Development Agreement with Wright Runstad Associates ("Wright Runstad") to act as the developer for the Chinook Building and Wright Runstad entered into an agreement with Zimmer Gunsal Frasca ("ZGF") to be the project architect and with Turner Construction to act as the general contractor. Turner Construction, in turn, subcontracted with Walters & Wolf to construct and install the curtain wall on the Chinook Building.

Walters & Wolf issued purchase orders to Viracon to fabricate approximately 3,000 IGUs for the Chinook Building's curtain wall. The purchase orders dictated that the IGUs were to be manufactured using gray PIB-based sealant. The IGUs were manufactured and delivered in 2006 and early 2007 and construction of the Building was substantially complete by August 2007. Goat Hill received a Certificate of Occupancy on September 25, 2007.

### 3. The Filming Defect on the IGUs

King County alleges that ten years later, on October 11, 2011, members of its Facilities Management Division noticed a gray film near the edges of some of the IGUs and it notified Viracon of the issue on October 27, 2011. King County further alleges that it conducted a photographic survey of the Chinook Building seven years later in October 2018, which revealed that "film formation is present with varying degrees of severity on all of the Building's nearly 3,000 [IGUs]." Dkt. No. 12 at 5.9.

Viracon does not contest the existence of the film on some of the IGUs. Nor does Viracon contest the cause of the film. Rather, the parties agree that the gray PIB-based sealant used on the IGUs was improperly formulated and did not contain UV stabilizers to protect the sealant from molecular degradation due to sunlight exposure. Thus, when exposed to sunlight over time, the gray PIB-based sealant began to degrade, causing a film to form on some of the IGUs. Viracon alleges that it did not know that the gray PIB-based sealant lacked a UV stabilizer until 2013 when the sealant's manufacturer, Truseal, disclosed this information to Viracon.

## III. STANDARD OF REVIEW

The standard for summary judgment is familiar: "Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact." *Zetwick v. County of Yolo*, 850 F.3d 436, 440 (9th Cir. 2017) (quoting *United States v. JP Morgan Chase Bank Account No. Ending 8215*, 835 F.3d 1159, 1162 (9th Cir. 2016)). A court's function on summary judgment is not "to weigh the evidence and

determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986).

## IV. DISCUSSION

King County charges Viracon with knowingly misrepresenting that IGUs manufactured with gray PIB-based sealant were functionally equivalent to IGUs manufactured with black PIB-based sealant, and but for this misrepresentation, IGUs with gray PIB-based sealant would not have been purchased for the Chinook Building. King County alleges that it has been damaged by Viracon's alleged misrepresentation because the IGUs on the Chinook Building now need to be replaced due to the faulty gray PIB-based sealant. King County further alleges that Viracon's actions not only provide the basis for a common law fraud claim but also a claim under the Washington Consumer Protection Act. The Court will address each of these claims below.

### A. Common Law Fraud

In order to prove fraud under Washington law, King County must demonstrate each of the following nine elements by clear, cogent, and convincing evidence: (1) representation of an existing fact, (2) the materiality of the representation, (3) the falsity of the representation, (4) the speaker's knowledge of the falsity of the representation or ignorance of its truth, (5) the speaker's intent that the listener rely on the false representation, (6) the listener's ignorance of its falsity, (7) the listener's reliance on the false representation, (8) the listener's right to rely on the representation, and (9) damage from reliance on the false representation. *Goel v. Jain*, 259 F. Supp. 2d. 1128, 1136 (W.D. Wash. 2003 (citing *Farrell v. Score*, 67 Wash.2d 957, 958-59) (1966)).

Here, Viracon claims that King County can produce no evidence to establish that Viracon communicated with the County before the IGUs were purchased for the Chinook Building or that

if such communication existed, Viracon knowingly misrepresented that IGUs manufactured with gray PIB-based sealant would perform identical to those manufactured with black sealant.

**1. Whether Viracon Made a Representations to King County**

In the Amended Complaint, King County alleges that Viracon represented to it that IGUs manufactured with "Gray PIB performed as well as [IGUs manufactured with] Black PIB and could be used interchangeably with identical results." Dkt. No. 12 at ¶ 5.15. King County alleges that Viracon made these representations in "product literature" it "disseminated" to its clients. *Id.* However, King County has been unable to substantiate this allegation through discovery and, instead, admits that it "does not presently know whether or when King County, itself, received" the alleged product literature. Dkt. No. 69, Ex. 19 at King County Am. Ans. to Interrogatory 9; *see also* King County Am. Ans. to Interrogatory 1 ("King County does not presently know (i) whether the representation was made directly to King County…"). At this stage of the litigation, it is King County's burden to present evidence that it reviewed and relied on the alleged product literature. Because it has failed to meet its burden, the allegation that the County relied on statements allegedly made by Viracon in its product literature must be dismissed. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt as to the material facts").

However, in its opposition to the instant motion, King County argues—for the first time in this litigation—that Viracon also represented to it that IGUs manufactured with gray PIB-based sealant would function the same as those with black PIB-based sealant through product samples it provided doing the construction process. Specifically, King County alleges that Viracon submitted "two miniature sample IGUs, one with gray PIB and one with black PIB" to the

"Chinook Building project team" when the team was deciding which IGUs to purchase for the Building. Dkt. No. 88 at 7, 3. King County argues that the "obvious inference from the two submittals is that Viracon was representing that [the] gray and black [PIB-based sealant] would work the same" and it is because of this representation that the project team chose the IGUs manufactured with gray sealant. Dkt. No. 8. Viracon points out that the alleged misrepresentation through the sample products was not pled in the complaint nor amended complaint; nor was it disclosed in response to Viracon's written discovery responses. Accordingly, Viracon requests that this Court strike King County's new theory of liability because it is "entirely bereft" of any support in the operative complaint, relies on a previously "undisclosed misrepresentation", and "is based on undisclosed facts." Dkt. No. 109 at 5. While the Court agrees that it is inappropriate to raise this argument for the first time in opposition to a summary judgment motion[1], the Court will address the argument in as much as for the reasons stated *infra*, it fails to rescue King County's misrepresentation claim.

King County does not claim to be a participant on the project team. Nor does it allege that it was present when Viracon presented the sample IGUs to the project team. Nevertheless, it

---

[1] "[T]he issues in the complaint guide the parties during discovery and put the defendant on notice of what evidence is necessary to defend against the allegations." *Rodriguez v. Countrywide Homes*, 668 F. Supp. 2d 1239, 1246 (E.D. Cal. 2009).Thus, courts routinely hold that "a plaintiff cannot oppose summary judgment based on a new theory of liability because it would essentially blindside the defendant with a new legal issue" after discovery is complete. *Id.* (citing *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292-1293 (9th Cir. 2000) (where plaintiff did not include legal theory in complaint and did not identify the theory at any time prior to summary judgment, she could not rely on the theory for the first time during summary judgment); *see also Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) ("[T]he necessary factual averments are required with respect to each material element of the underlying legal theory ….Simply put, summary judgment is not a procedural second chance to flesh out inadequate pleadings."); *Colbert v. City of Chicago*, 851 F.3d 649, 656 ("[A] party may neither amend its pleadings by argument in opposition to summary judgment nor introduce new theories of liability in opposition to summary judgment" and "parties cannot add entirely new factual bas[e]s…not previously presented.") (internal citation omitted).

claims that project team was acting as its agent and, as such, the representation to the project team constituted a representation to the County. Viracon counters that there was no agency relationship between King County and the Chinook Building project team. Rather, Viracon points out, the Chinook Building project team was comprised of individuals from Wright Runstad (the Chinook Building developer) and ZGF (the Chinook Building architect) who were agents of Goat Hill (the Chinook Building owner and King County's landlord), not King County. Viracon further argues that the Building Ground Lease Agreement ("Ground Lease") between King County and Goat Hill specifically disavows an agency relationship between King County and Goat Hill:

> **No Joint Venture or Agency**. Nothing contained in this Building Ground Lease nor any of the acts of the parties hereto shall be construed nor is it the intent of the parties, to create a joint venture or partnership between Lessor and Lessee, *nor is either party the agent or representative of the other*, and nothing in this Building Ground Lease shall be construed to create any such agency relationship or to hold either party liable to anyone for goods delivered or services performed at the request of the other party.

Dkt. No. 93, Ex. 27 at ¶ 16.2 (bold in original, italics added). Thus, Viracon argues, there was no agency relationship between King County and the Chinook Building project team.

King County attempts to overcome this obstacle by arguing that the Ground Lease between it and Goat Hill "assigned any claims that Goat Hill would have to King County." Dkt. No. 88 at 9. In support of this claim, King County cites to the Ground Lease and the Project Lease Agreement ("Lease Agreement") between it and Goat Hill. The pinpoint citations to which King County directs the Court do not support its assertion that the documents "assigned" Goat Hill's claims to the County. Indeed, the Court has reviewed the entirety of both documents and cannot find support for such a claim.[2] Thus, King County has failed to present any evidence that Viracon

---

[2] The only reference to claim assignment in the documents is under Section 5.8 of the Lease Agreement, which states that at King County's request, Goat Hill shall assign any warranty rights to the County. However, King County is not asserting a breach of warranty claim in this case.

communicated with anyone from the County regarding the IGUs; King County's argument about the sample IGUs is ineffectual.[3]

**2. Whether Viracon Knowingly Misrepresented that the Gray PIB-Based Sealant Would Function the Same as the Black PIB-Based Sealant**

As stated above, King County alleges that at the time the Chinook Building project team selected which IGUs to purchase for the Building, Viracon falsely reported that IGUs manufactured with gray PIB-based sealant would function the same as those manufactured with black PIB-based sealant when Viracon had reason to believe that was not the case. Dkt. No. 88 at 8. Viracon counters that at the time it sold the IGUs, it did believe that the gray sealant would perform the same as the black sealant and it had no reason to think otherwise.

King County concedes that Viracon did not receive its first notification of a filming issue associated with IGUs manufactured with gray PIB-based sealant until after Viracon manufactured and sold the IGUs used on the Chinook Building. *See* Dkt. No. 88 at 5. Nevertheless, King County alleges that Viracon had information in its possession before it sold the IGUs for the Chinook Building that either placed Viracon on notice or should have placed it on notice that the gray PIB-based sealant used on the Chinook Building IGUs was defective. As evidence of this, King County points to the following: (1) an August 30, 2005 graph prepared by Viracon's sealant manufacture that compares "shear resistance" of five sealants, including the gray sealant used in the Chinook Building IGUs; (2) an October 24, 2005 report prepared by Viracon that compared the shear strengthen of three sealants, including the gray sealant used on the Chinook Building

[3] Underscoring this lack of communication, King County witnesses repeatedly testified that they never heard of Viracon—at least not until late 2017—ten years after the IGUs were purchased and installed on the Chinook Building. *See e.g.*, Dkt. No. 69, Exs. 7, 9.

IGUs; and (3) the deposition testimony of a now retired Viracon employee regarding viscosity testing performed on IGUs that were returned to Viracon after the filming issue was discovered.[4]

Each of the foregoing refers to "shearing"—an issue that sometimes occurred during the IGU manufacturing process. As stated above, Viracon's IGUs consist of at least two lites of glass separated by a metal spacer enclosing a hermetically sealed air space. During manufacturing, the PIB-based sealant is applied to the spacer bar that separates the two lites of glass. As explained, *supra*, the PIB-based sealant does not serve a structural purpose; rather, it is utilized to hold the lites in place during the manufacturing process before a secondary, structural silicone sealant is added. Occasionally with large IGUs, one of the lites of glass would slip before the structural sealant was added. The parties refer to this as "shearing". When an IGU experienced shearing, it was discarded. Viracon eventually solved the shearing problem during manufacturing by supporting the weight of the IGUs from the bottom until after the structural sealant had been added.

The August 30, 2005 graph and the October 24, 2005 report show that the brand of gray PIB-based sealant used in the Chinook Building IGUs experienced faster shearing during manufacturing than other gray or black PIB-based sealants. King County argues that this information placed or should have placed Viracon on notice that IGUs manufactured with the gray PIB-based sealant would not function the same as IGUs manufactured with black sealant.

[4] King County also points to a Viracon internal email dated May 16, 2007 in which a Viracon employee refers to the gray PIB-based sealant as "the bad stuff" and claims that this is evidence that Viracon knew the gray PIB-based sealant was defective before it sold the IGUs used on the Chinook Building. Dkt. No. 93, Ex. 18. However, this email was written over a year *after* the Chinook Building IGUs were purchased and months after they were manufactured and delivered to the site. Dkt. No. 69, Ex. 6.

There are several problems with King County's argument. First, the foregoing evidence demonstrates that Viracon also experienced "shearing" with its black and other gray sealants (albeit at a slower rate) and there is no evidence that those sealants later caused filming in IGUs once they were in the field. Second, the evidence demonstrates that the "shearing" issue was limited to the manufacturing process. Once the second, structural silicone sealant was added to the IGU, Viracon had no reason to be concerned that an IGU manufactured with the gray sealant at issue in this lawsuit would function differently from one manufactured with black or other gray sealants. Indeed, there is no suggestion in this case that an IGU manufactured with the relevant gray sealant (or any sealant for that matter) ever experienced shearing once it left the factory floor and was utilized in the field.

Lastly, Viracon's two expert witnesses testified that the cause of the shearing issue—the weight of the glass lites—is unrelated to the cause of the filming issue—lack of UV stabilizers, which caused the gray sealant to degrade after years of exposure to sunlight. Dkt. No. 69, Ex. 15 at 24:22-25 (stating that Viracon's "observations of short-term physical performance during assembly are unrelated to the degree to which the [gray PIB-based sealant] was UV stabilized"); Dkt. No. 69, Ex. 12 at 49 (stating that the cause of the shearing issue was unrelated to the cause of filming issue). King County's experts do not contradict this testimony. *See* Dkt. No. 69, Ex. 14 at 79:7-12. Indeed, one of their experts, Dan Lemieux, expressly disavows having any opinion as to whether there is a relationship between the shearing and filming issues. Dkt. No. 69, Ex. 13 at 43:8-44:22.

King County attempts to overcome this deficit by cherry-picking a statement made by Charles Boyer, a now retired employee of Viracon, in a deposition given in another case. King County claims that Dr. Boyer "admitted that the shearing in the factory and the melting in the sun

were correlated to the same [] defect." Dkt. No. 88 at 3. However, King County takes Dr. Boyer's testimony out of context. A more complete review of the deposition transcript and supporting exhibit reveal that Dr. Boyer was not referring to the shearing issue that occurred during manufacturing. Rather, Dr. Boyer was referring to testing he performed on IGUs in 2013 when Viracon was trying to ascertain why some of the IGUs developed filming in the field. At the time, Viracon theorized that the filming could have been caused by materials the glaziers used when they installed the IGUs on the buildings. Dr. Boyer attempted to replicate this by exposing both gray and black sealant to "[g]lazier components with solvent and plasticity" and then tested the plasticity and shear strength of the IGUs. Dkt. No. 110, Ex. 2. He determined that the gray sealant was more susceptible to the glazer materials and, thus, determined that what caused the gray sealant to form a film was the material the glazier used. However, Dr. Boyer was not asked, nor did he testify to, any correlation between the *manufacturing* shearing issue and the filming issue that occurred in the IGU years after they were placed in service. Moreover, Dr. Boyer's theory that the glazer materials caused the gray sealant to migrate was later disproven when Viracon's sealant manufacturer admitted that the gray sealant did not contain UV stabilizers.

Because King County concedes that Viracon did not have actual notice of the potential filming issue associated with the gray PIB-based sealant until after Viracon manufactured and sold the IGUs used on the Chinook Building, and because King County can point to no evidence demonstrating a correlation between the manufacturing shearing issue and the filming issue such that the shearing issue should have placed Viracon on notice of the potential filming issue, this Court concludes that no jury could reasonably find that Viracon made a knowing

misrepresentation at the time it sold the Chinook Building IGUs; the common law fraud claim must be dismissed.[5]

**B. The Washington Consumer Protection Act Claim**

To prevail in a private Washington Consumer Protection Act ("WCPA") claim, King County must establish (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to a person's business or property, and (5) causation. RCW 19.86.090; *Hangman Ridge Training Stables v. Safeco Title Ins. Co.*, 719 P.2d 531, 533 (Wash. 1986). As a requisite, King County must demonstrate that Viracon had presale knowledge of the defect. *Burbo v. Harley C. Douglass, Inc.*, 106 P.3d 258, 267 (Wn.App. 2005); *see also Williams v. Yamaha Motor Corp., U.S.A.*, 106 F. Supp. 3d 1101, 1115 (C.D. Cal. 2015, *aff'd* 851 F.3d 1015 (9th Cir. 2017) (dismissing WCPA claim where plaintiff failed to adequately allege knowledge of the purported defect at the time of sale).

As stated above, King County has failed to produce sufficient evidence to allow a jury to reasonably conclude that Viracon knew that the gray PIB-based sealant would not perform the same as black PIB-based sealant when it sold the IGUs that were installed on the Chinook Building. As such, the WCPA claim must be dismissed.[6]

---

[5] It is for this reason that King County's "duty to disclose" argument also fails. *See Beaty v. Ford Motor Co.*, 2020 WL 639408, *4 (W.D. Wash. Feb. 11, 2020) (stating that the "duty to disclose a defect depends, obviously, on [a party's] knowledge of that defect").

[6] Viracon also urges this Court to dismiss the WCPA and fraud claims as time-barred because King County was aware of the filming issue on the IGUs "since at least 2014" but did not file the instant lawsuit until April 8, 2019, well outside the limitations period. Dkt. No. 68 at 17-18. In support of its argument, Viracon points to the deposition testimony of Ryan Schultz, a window washer employed by the County. Mr. Schultz was deposed in August 2020 and during the deposition he testified that he first noticed the filming issue on the Chinook Building IGUs "roughly…six or seven years" prior to his deposition. Dkt. No. 69, Ex. 16 19:14-20:12. He also testified that he reported the issue to his immediate supervisor at King County. However, Mr. Schultz also clarified that he reported the issue to his immediate supervisor, not because he

## V. CONCLUSION

Based on the foregoing, the Court HEREBY GRANTS Viracon's motion for summary judgment (Dkt. No. 68) and the matter is DISMISSED.

Dated this 20th day of July 2021.

Barbara Jacobs Rothstein
U.S. District Court Judge

suspected there was an issue with the IGUs, but rather because "it almost look[ed] like it's messy cleaning work" and he wanted to make sure that his supervisor did not think it was a result of sloppy cleaning by him. *Id*. at 20:13-16. He further clarified that he did not report the issue to King County management. *Id*. at 21:13-16. In addition, Michael Marr, the other window washer employed by the County at the time, testified that while he also noticed the filming issue on the IGUs, he did not report it to anyone at the County because he "just do[es] windows", he "never gave it much thought," and "it meant nothing to [him]." Dkt. No. 89 at ¶ 9.

While it is not necessary for the Court to reach this issue because it has already determined that the fraud and WCPA claims must be dismissed on the merits, the Court concludes that a question of fact exists as to whether Mr. Schultz's observations placed King County on notice that it had potentially been harmed by Viracon and, as such, summary judgment would be inappropriate on the issue of whether the claims are time-barred. *See Grisham v. Philip Morris, Inc*., 670 F. Supp. 2d 1014, 1021 ("Summary judgment is rarely proper where the statute of limitations runs from when plaintiff discovered or should have discovered elements of the cause of action.") (quoting William W. Schwarzer, Wallace A. Tashima, & James M. Wagstaffe, *Federal Procedure Before Trial*, § 14:297 (2009 supp.)).