The Honorable Barbara J. Rothstein

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KING COUNTY,

        Plaintiff,

v.

VIRACON, INC.,

        Defendant.

Civil Action No. 2:19-cv-508-BJR

**ORDER DENYING MOTION FOR RECONSIDERATION RE ADDITIONAL RULE 60**

## I.    INTRODUCTION

King County instituted this action against Defendants Viracon, Inc. ("Viracon"), Quanex IG Systems Inc. ("Quanex"), and TruSeal Technologies Inc. ("TruSeal") in April 2019, alleging claims related to windows manufactured by Viracon and installed on an office building owned by King County. Dkt. No. 1. In July 2021, this Court granted summary judgment to Viracon and dismissed the case (Quanex and TruSeal had been dismissed from the lawsuit previously). Dkt. No. 154. King County now moves this Court to reconsider its decision; Viracon opposes the motion.[1] Dkt. Nos. 161, 164. Having reviewed the motion and opposition thereto, the record of

---

[1] King County's motion is titled: "King County's Motion for Reconsideration Re Additional Rule 60". Dkt. No. 161. King County has also filed another motion titled Motion for Reconsideration re Order on Motion for Summary Judgment [Dkt. No. 156], the order on which is forth coming.

the case, and the relevant legal authority, the Court will deny the motion. The reasoning for the Court's decision follows.

## II. BACKGROUND

### A. Factual Background

At the center of this lawsuit is "the Chinook Building", an office building located in Seattle, Washington that was built in 2007 pursuant to a private-public partnership between Goat Hill Properties ("Goat Hill"), an investment builder, and King County. The Chinook Building has what the parties refer to as a curtain wall exterior—an exterior comprised of insulating glass units ("IGUs") that were manufactured and sold by Viracon. King County alleges that some of the IGUs on the Chinook Building have developed a film that partially obstructs the view from the building's windows and, as such, must be replaced.

The IGUs installed on the Chinook Building were manufactured using a primary sealant made from polyisobutylene ("PIB-based sealant"). Historically, Viracon fabricated IGUs using only black PIB-based sealants, but beginning in 2002, Viracon added gray PIB-based sealant as an option for its customers. The Chinook Building IGUs were manufactured using gray PIB-based sealant. The IGUs were manufactured and delivered in 2006 and early 2007 and construction of the building was substantially complete by August 2007. Goat Hill received a Certificate of Occupancy on September 25, 2007.

The parties agree that the gray PIB-based sealant was improperly formulated and did not contain UV stabilizers to protect the sealant from molecular degradation due to sunlight exposure. Thus, when exposed to sunlight over time, the gray PIB-based sealant began to degrade, causing a film to form on some of the IGUs. Viracon alleges that it did not receive actual notice of the filming issue until after it manufactured and sold the IGUs used on the Chinook Building, and it

did not know that the gray PIB-based sealant lacked a UV stabilizer until 2013 when the sealant's manufacturer, Truseal, disclosed this information to Viracon. Nevertheless, King County alleges that Viracon had information in its possession before it sold the IGUs for the Chinook Building that should have placed Viracon on notice that the gray PIB-based sealant used on the Chinook Building IGUs was defective. Therefore, King County charged Viracon with mispresenting that IGUs manufactured with gray PIB-based sealant were functionally equivalent to IGUs manufactured with black PIB-based sealant, and but for this misrepresentation, IGUs with gray PIB-based sealant would not have been purchased for the Chinook Building.

**B.  Procedural Background**

King County brought this action against Viracon, Quanex, and Truseal, alleging three causes of action: (1) violation of the Washington Products Liability Act ("WPLA"), (2) common law fraud, and (3) violation of the Washington Consumer Protection Act ("WCPA"). Dkt. No. 1. King County amended the complaint in May 2019 and each defendant moved to dismiss the claims against it. Dkt. Nos. 12, 29, and 32. This Court granted Quanex and Truseal's joint motion to dismiss in October 2019 and partially granted Viracon's motion in December 2019, dismissing the WPLA claim, but denying the motion as to the common law fraud and WCPA claims. Dkt. Nos. 53-54. The parties proceeded to discovery, after which, Viracon moved for summary judgment on these two remaining claims. Dkt. No. 68.

This Court granted summary judgment for Viracon, concluding, among other things, that King County had failed to present any evidence to suggest that Viracon was on notice of the potential filming issue associated with the gray PIB-based sealant at the time the Chinook Building IGUs were purchased and manufactured, and therefore, no jury could reasonably find

that Viracon made a knowing misrepresentation regarding the equivalency of the grey and black PIB-sealant at the time of the sale. Judgment was entered against King County on July 20, 2021.

King County now moves this Court pursuant to Rule 60 to vacate the judgment, claiming that it has in its possession newly discovered evidence that demonstrates that Viracon did have pre-sale knowledge of the filming issues associated with the grey PIB-based sealant. King County alleges that on August 2, 2021, its attorney received a document production from Quanex in another action pending against Viracon before the American Arbitration Association in Los Angeles, California, entitled *Pointe Assets LCC v. Viracon, Inc.*, AAA Case No.: 01-21-0000-2426. King County's attorney represents Pointe Assets LLC ("Pointe Assets") in the arbitration and the dispute also centers on IGUs manufactured by Viracon with gray PIB-based sealant. King County alleges that Quanex produced approximately 1,175 pages of documents pursuant to a deposition subpoena Pointe Assets served in the arbitration and that contained within the production were five documents that establish Viracon's pre-sale knowledge of the grey PIB-based sealant's filming issue. King County further alleges that Viracon should have produced the documents as part of the discovery in the instant case and, as such, this Court should "reverse its summary judgment ruling and allow King County additional discovery …." Dkt. No. 161 at 4.

### III.     DISCUSSION

The decision to grant or deny a motion for reconsideration is left to the sound discretion of the trial court. *See Sch. Dist. No. 1J, Multnomah County v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). Such motions are disfavored and, absent exceptional circumstances, are only appropriate "if the district court (1) is presented with newly discovered evidence; (2) committed clear error or the initial decision was manifestly unjust; or (3) if there is an intervening change in controlling law." *Id*. Here, King County seeks relief from the judgment based on newly

discovered evidence. Federal Rule 60(b) provides, in relevant part, that: "[o]n motion and upon terms as are just, the court may relieve a party … for the following reasons … (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)." Fed. R. Civ. P. 60(b)(2). To succeed on such a motion, the moving party must demonstrate that (1) the evidence relied on in fact constitutes "newly discovered evidence"; (2) the moving party exercised due diligence to discover this evidence; and (3) the newly discovered evidence must be of "such magnitude that production of it earlier would have been likely to change the disposition of the case." *Feature Realty, Inc. v. City of Spokane*, 331 F.3d 1082, 1093 (9th Cir. 2003) (quoting *Coastal Transfer Co. v. Toyota Motor Sales, U.S.A., Inc.*, 833 F.2d 208, 211 (9th Cir.1987)).

        A.        **The Evidence Is Not "Newly Discovered" within the Meaning of Rule 60(b)**

King County's argument fails from the start because the proffered evidence is not "newly discovered evidence" for purposes of Rule 60(b)(2). As stated above, King County alleges that it first came into possession of the five documents in question in August 2021 when its attorney, Scott Hennigh, received Quanex's production as part of the Pointe Assets arbitration; however, King County's assertion is not born out by the facts. Mr. Hennigh was lead counsel for the plaintiff in litigation captioned *CDC San Francisco, LLC v. Webcor Builders, et al.*, Case No. CGC-15-546222 (Cal. Sup. Ct.) ("the CDC litigation"). The CDC litigation was filed in 2015 and also involved IGUs manufactured by Viracon with grey PIB-based sealant that experienced the filming issue and each of the five documents was produced by Quanex to Mr. Hennigh in 2016 as part of the CDC litigation. *See* Dkt. No. 166, Declaration of Eric S. Fisher, at ¶ 7 ("All of the documents produced to Hennigh Law Corporation [as part of the Pointe Assets arbitration] were previously produced by Quanex in the CDC litigation."). In other words, King County's attorney

had each of the documents in his possession years before this Court issued the judgment in this case. It is black letter law that evidence is not "newly discovered" if it was in the moving party's possession before the judgment was rendered. *Feature Realty*, 331 F.3d at 1093; *see also Coastal Transfer,* 833 F.2d 212 ("Evidence is not 'newly discovered' under the Federal Rules if it was in the moving party's possession at the time of trial or could have been discovered with reasonable diligence); *Parrilla-Lopez v. U.S.*, 841 F.2d 16, 19 (1st Cir. 1988) (evidence known to a party at the time of trial is not "discovered" after trial simply because the party thought it was not worth the time and expense to track down until receiving an unfavorable result at trial); 11 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2859 (West 1995) ("... [I]f [evidence] was in the possession of the party before the judgment was rendered it is not newly discovered and does not entitle the party to relief.").

King County attempts to circumvent this black letter law by arguing that whether Mr. Hennigh had access to these documents as part of the document production in another case is not relevant and, regardless, Mr. Hennigh had "never seen" the five documents before the Point Assets production. Dkt. No. 168 at 1. Once again, King County's argument fails. It is well-established that documents in the possession of a party's attorney are deemed to be in the party's possession. *Lans v. Gateway 2000, Inc.*, 110 F. Supp. 2d 1, 5 (D.D.C. 2000); *see also MTB Bank v. Federal Armored Express, Inc.*, 1998 WL 43125, *11-12 (S.D.N.Y. Feb. 2, 1998) ("The central question for the Court, then, is whether the [contract] was in the 'possession' of the Defendant insofar as an executed original of such documentation was located in the files of the Defendant's outside corporate counsel at the time of the Plaintiff's motion for summary judgment. The answer, the Court finds, is an unequivocal 'yes'".). The one case King County cites to suggest that it should not be bound by the documents in its attorney's possession, *Kravitz v. United States*

*Department of Commerce*, 382 F. Supp. 3d 393 (D. Mary. 2019), is readily distinguishable. In *Kravitz*, the court concluded that documents in the possession of "[t]he large law firm" representing a party were "newly discovered" because the law firm had access to the documents through "work on an unrelated case" and "had no reason to search the documents for terms relevant to [the instant] action." *Id*. at 401-02. Here, the documents were produced as part of a litigation that involved nearly identical issues and are indisputably relevant to this lawsuit. Indeed, King County cited to documents produced in the CDC litigation as part of its motion practice and listed over thirty of the CDC documents on its trial exhibit list in this litigation. *See* Dkt. No. 153, Ex. 2.

   **B.**  **King County Did Not Exercise Due Diligence**

  Rule 60(b)(2) also requires that the moving party establish that it was diligent in discovering the new evidence. *Coastal Transfer*, 833 F.2d at 211; *United States v. Tanous*, 165 F.R.D. 96, 97 (D. Hawai'i 1995) (moving party must show that the evidence "could not have been discovered through due diligence"). King County cannot make this showing. For instance, King County listed as an exhibit in this litigation a May 30, 2012 email that was produced in the CBC litigation. The CBC Bates number for the May 30, 2012 email immediately precedes the CBC Bates number for one of the "newly discovered" documents on which King County bases this motion (the June 15, 2011 email). Thus, there is no reasonable explanation for counsel's failure to "discover" the June 15 email in the CDC production. What is more, Viracon identified multiple documents from the CDC production as possibly being relevant to this litigation. *See* Dkt. No. 162, Ex. H, Defendant Viracon Inc.'s Amended Initial Disclosures. Viracon noted that because King County's counsel represented the plaintiff in the CDC litigation, "these exhibits are already in counsel's possession. However, Viracon will produce copies of all exhibits to King County

upon request." *Id.*, Ex. H at 2. King County never requested the documents. Thus, this Court concludes that the evidence at issue could have been discovered through the exercise of due diligence.

      **C.**      **The "Newly Discovered" Evidence Would Not Change the Outcome of this Case**

Lastly, this Court concludes that the "newly discovered" evidence on which King County bases this motion is not of "such magnitude that production of it earlier would have been likely to change the disposition of the case." *Jones v. Aero/Chem Corp.*, 921 F.2d 875, 878 (9th Cir. 1990). The Court reaches this conclusion for two reasons. First, the newly discovered evidence must be admissible. *Goldstein v. MCI WorldCom*, 340 F.3d 238, 257 (5th Cir. 2003) (noting "as self evident the requirements that newly discovered evidence be both admissible and credible"). Viracon alleges that one of the five "newly discovered" documents—handwritten notes allegedly taken by an unidentified Quanex employee and dated April 3, 2012—are inadmissible because they constitute hearsay. Viracon points out that without knowing who allegedly took the notes and who allegedly made the statements in the notes, it is impossible to authenticate the notes, establish context, or test reliability. King County wholly ignores this argument; therefore, the Court deems the matter conceded and concludes that the notes are inadmissible hearsay. *See Beam v. Colvin*, 2014 WL 5111192, *5 (W.D. Wash. Oct. 10, 2014) (finding party conceded issue by failing to address it in responsive brief); *Lykins v. Hohnbaum*, 2002 WL 32783973, *3 (D. Or. Feb. 22, 2002) (finding plaintiff conceded dismissal of a claim on motion for summary judgment by not addressing it).

Second, the remaining four "newly discovered" documents would not change the disposition of this case. To understand why, it is necessary to briefly revisit one of the issues raised in the parties' summary judgment briefing. As stated above, King County conceded that

Viracon did not have actual knowledge of the filming issue with the grey PIB-based sealant until January 2008, which is after the IGUs were purchased and manufactured for the Chinook Building (Goat Hill received the Certificate of Occupancy on September 25, 2007). However, King County alleges that Viracon should have been put on notice by an issue Viracon experienced during the IGU manufacturing process. Viracon's IGUs consist of at least two lites of glass separated by a metal spacer enclosing a hermetically sealed air space. During manufacturing, the PIB-based sealant is applied to the spacer bar that separates the two lites of glass. The PIB-based sealant does not serve a structural purpose; rather, it is utilized to hold the lites in place during manufacturing before a secondary, structural silicone sealant is added. Occasionally with large IGUs, one of the lites of glass would slip before the structural sealant was added. The parties refer to this as "shearing". When an IGU experienced shearing, it was discarded. Viracon eventually solved the shearing problem during manufacturing by supporting the weight of the IGUs from the bottom until after the structural sealant had been added.

During summary judgment, King County argued that the shearing issue during manufacturing should have placed Viracon on notice that the grey PIB-based sealant would experience filming issues in the field. The Court rejected this argument for several reasons:

> First, the [] evidence demonstrates that Viracon also experienced "shearing" with its black and other gray sealants (albeit at a slower rate) and there is no evidence that those sealants later caused filming in IGUs once they were in the field. Second, the evidence demonstrates that the "shearing" issue was limited to the manufacturing process. Once the second, structural silicone sealant was added to the IGU, Viracon had no reason to be concerned that an IGU manufactured with the gray sealant at issue in this lawsuit would function differently from one manufactured with black or other gray sealants. Indeed, there is no suggestion in this case that an IGU manufactured with the relevant gray sealant (or any sealant for that matter) ever experienced shearing once it left the factory floor and was utilized in the field.
>
> Lastly, Viracon's two expert witnesses testified that the cause of the shearing issue—the weight of the glass lites—is unrelated to the cause of the filming issue— lack of UV stabilizers, which caused the gray sealant to degrade after years of

exposure to sunlight. Dkt. No. 69, Ex. 15 at 24:22-25 (stating that Viracon's "observations of short-term physical performance during assembly are unrelated to the degree to which the [gray PIB-based sealant] was UV stabilized"); Dkt. No. 69, Ex. 12 at 49 (stating that the cause of the shearing issue was unrelated to the cause of filming issue). King County's experts do not contradict this testimony. *See* Dkt. No. 69, Ex. 14 at 79:7-12. Indeed, one of their experts, Dan Lemieux, expressly disavows having any opinion as to whether there is a relationship between the shearing and filming issues. Dkt. No. 69, Ex. 13 at 43:8-44:22.

Dkt. No. 154 at 11.

The "newly discovered" documents do not contradict the foregoing conclusions. King County points to an October 15, 2010 email exchange between Viracon and TruSeal in which the participant discuss action items related to the gray PIB-based sealant, including "checks [that] are in place to prevent" "historical issues". Dkt. No. 162, Ex. B at 9. Four "historical issues" are listed: debris in butyl slugs, shearing on large IGUs, "running" PIB, and color checks. *Id*. Notably, this email in no way equates the shearing and filming issues. Indeed, by listing shearing as a separate action item from "running" PIB, the email further substantiates Viracon's claim that the shearing issue in manufacturing is wholly unrelated to the filming issue experience in the field. And, of course, this email was written three years after the Chinook Building IGUs were purchased and manufactured. Thus, even if the email somehow established that the shearing issues should have placed Viracon of the potential filming issue—which it does not—it does not relate to the relevant time period—2007 or earlier.[2]

Likewise, earlier production of the "newly discovered" product development notes created by Quanex in 2002 that tested the shear strength of the PIB-based sealant at different weights and temperatures would have been unlikely to impact the outcome of this case. Not only is there no indication that Viracon was in possession of the document prior to 2007, but it in no way

---

[2] Similarly, the "newly discovered" June 8 and 15, 2011 emails do not equate the shearing issue with the filming issue and do not relate the relevant timeframe.

indicates that shearing issues (caused by the weight of the glass lites during manufacturing) placed Viracon on notice of the filming issue (caused by UV exposure in the field). Simply put, the "newly discovered" documents do not address a fatal flaw to King County's claims—the absence of evidence, expert or otherwise, to contradict Viracon's expert testimony that the shearing issue experienced in manufacturing is unrelated to the filming issue experienced in the field years after the IGUs were manufactured.[3]

### IV. CONCLUSION

For the foregoing reasons, the Court HEREBY DENIES King County's motion for relief from judgment pursuant to Rule 60.

Dated this 15th day of March 2022.

Barbara Jacobs Rothstein
U.S. District Court Judge

---

[3] In its reply in support of this motion, King County submits the Declaration of Vishu Shah that attempts to establish an association between manufacturing shear and filming that occurred years later in the field. Dkt. No. 170. King County never disclosed Shah as an expert as required by Rule 26(a)(2) and this Court's scheduling order, and thus, Shah never submitted an expert report and was never deposed in this case. The Court hereby strikes Shah's testimony due to King County's failure to disclose Shah until well after it lost summary judgment and only then as part of its reply in connection with a second reconsideration motion. *Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 969 n. 5 (9th Cir. 2006) ("It is not an abuse of discretion to exclude a party's expert testimony when that party failed to disclose the expert report by the scheduling deadline and that party reasonably could have anticipated the necessity of the witness at the time of the deadline.").